BUSHNELL, Respondent, vs. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

*September 12—October 8, 1935.*

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *V. A. Swanson,* all of Milwaukee.

*Charles E. Briere* of Wisconsin Rapids, for the respondent.

FOWLER, J. The action is to recover for "presumably permanent" total disability on two life insurance policies, by each of which the company agreed that, if, while no defaults of premium payments existed, the insured became "totally

and permanently" disabled before becoming sixty years of age, the company would pay him $30 monthly during the period of such disability, and would waive premium payments during such period. The face of the policy provides that, if total disability results from conditions that render it reasonably certain that it will be permanent or exists for ninety days continuously, it shall be presumed during its continuance to be permanent. The face of the policy thus provides, assuming proper proofs are made, for payment of benefits and waiver of premiums during a period of total disability if such disability continues for ninety days as did the plaintiff's, although the total disability thereafter ceases. But the face of the policy provides as prerequisite to payment of any benefits or waiver of premiums that proof must be made of both total disability and its continuance uninterruptedly from the time of its commencement to the time of making the proof.

The court found that the plaintiff, before becoming sixty years of age, and while not in default, became "totally and presumably permanently disabled," and so remained continuously from July 13, 1933, to December 8, 1933, and paid premiums aggregating $162.20 while so disabled, and allowed judgment for the aggregate of this sum and the monthly payments stipulated by the contract, with interest. The court also found that proofs were provided by the plaintiff on January 18, 1934, and that during the said period of total disability the plaintiff was not "in proper condition" to attend to furnishing his proof.

The defendant denies liability on the ground that, as the policy requires as a condition of payment of benefits and waiver of premiums proof of total disability be furnished during its continuance, and as the plaintiff did not make his proof until after his such period had terminated, he cannot recover. The face of the policy plainly so provides, and must

control, unless a provision relied on by the plaintiff respecting delayed proof printed on the back of the policy and a part of the contract exempts the case from the other provision. Thus, whether the plaintiff can recover depends upon the construction to be given to this indorsed provision respecting delayed proof. This provision refers to the provision on the face of the policy relating to payment of benefits in event of total disability, which covers, as above indicated, benefits both in case of permanent total disability and presumably permanent total disability as there defined which has ceased. The indorsed provision reads as follows:

"Benefits if Proof Delayed and no Premium in Default.— If, while no premium is in default, the proof furnished the company under the section providing for 'Benefits in Event of Total and Permanent Disability before Age 60' is such as to entitle the insured to the disability benefits provided for therein, *and if due proof is also furnished the company that such disability has been continuous since its beginning,* the company will:

"(a) Begin the monthly income payments provided for in such section as of the end of the first completed month of such disability if earlier than the date of receipt of such proof instead of as of the date of receipt of such proof, and

"(b) Return any premium due after the beginning of such disability which has been paid during the continuance thereof."

It is to be noted that the portion of the indorsed provision above italicized expressly states that, in order to entitle the insured to whatever advantage is secured by it, "due proof" must be furnished of the total disability, whether actually permanent or presumably permanent, because existing continuously for ninety days, and that it "has been continuous since its beginning." Obviously, if as in the instant case total disability ceased on December 8th, and the proof of it was made on January 18th following, the total disability did not continue from its beginning up to the time of furnishing

the proof. Thus, if we give the language of the indorsed provision respecting the making of delayed proof its literal meaning, the contention of the defendant must prevail.

By the face of the policy no specific time is fixed for the furnishing of proof. It may be made at any time while total disability that has been continuous exists, and, if proof is furnished while such disability exists, and it has existed continuously for ninety days and up to the time the proof is furnished, the payment of benefits begins when the proof is furnished. By the indorsed provision payment of benefits in case of *delayed* proof begins at the end of the first completed month of total disability.

The indorsed provision was manifestly made in order to afford some measure of relief to the insured from the provision of the face of the policy respecting the furnishing of proof as prerequisite to recovery. The plaintiff contends that the construction of the indorsed provision contended for by the defendant would make it operate to the hurt of the insured and that that construction is therefore erroneous. He contends that it would so operate because it would postpone the beginning of payment of benefits to a month after the beginning of total permanent disability, instead of the time of the receipt of proof, as the body of the policy provides, because proof of total permanent disability may be made immediately upon its occurrence. But the indorsed provision does not fix the beginning of payments at a month after disability occurs unless the end of the first month of disability is later than the receipt of proof. If the receipt of proof is earlier than the end of the first month of disability, the payment of benefits begins on the receipt of proof as provided by the face of the policy. Thus the effect of the provision for delayed proof is either to advance the beginning of the payment of benefits or not to affect it at all. It cannot operate to postpone it.

We cannot avoid the conclusion that by the express terms of the indorsed provision relied on by the plaintiff as basis of recovery for total disability presumably permanent the proof of total disability must be furnished to the company while such disability exists. That is the only meaning that can be given to the clause of that provision "due proof is also furnished the company that such disability has been continuous *since* its beginning." It cannot have continued since its beginning unless it exists at the time the proof is furnished. This is consistent with the provision of the face of the policy that total disability of the kind or extent specified "shall be presumed to be permanent during its continuance." This means the presumption of permanent total disability exists only during the period of total disability. Manifestly, total disability cannot be presumed to be permanent after it has ceased to exist. The meaning of the indorsed provision merely is that, if the insured shall delay furnishing "due proof" of total disability for more than one month after it begins, whether actually permanent or presumably permanent because of conditions making it reasonably certain that it will be permanent, the payment of benefits shall begin at the end of the first month instead of upon the receipt of the proof. No other provision of the face of the policy respecting proof of total disability is affected by it.

The defendant also contends that the findings of the trial court that the "plaintiff was not in proper condition to attend to . . . the filing of his proof of loss during the continuance of such [his] total and presumably permanent disability" is against the clear weight and preponderance of the evidence. This contention must be upheld. If it be conceded, as contended by the respondent, that "physical or mental incapacity waives or excuses defaults in making proof and prevents a forfeiture," and be further conceded that the finding quoted is equivalent to a finding of "physical or mental incapacity,"

the evidence falls far short of establishing such incapacity. The evidence upon the subject is very brief. The plaintiff testified:

"During the period from July 13, 1933, to December 8, 1933, I did practically nothing. I am in the oil business. I did practically nothing as far as I can remember with respect to that business. I might have sent out a check but as far as even talking to salesman, I didn't do anything or any manual work of any kind."

The physician who treated him testified that he was totally disabled from July 13th to December 8th, and defined total disability as "where a man should not and could not do anything, or tend to any of the duties of his occupation." From July 13th to September 6th the plaintiff "was able to be around but was pretty weak and was losing weight. We sent him down—we thought maybe a rest would be good— and he went down to Coloma to a lake there. We thought if he would get away from town and everything, he would pick up, but he got worse and they had to bring him back." Later he was sent to a hospital and was operated on for an abscess in the kidney on September 6th. He was in the hospital "quite a little of that time [July 13th to December 8th], especially before the operation, and after . . . [it] for a long time." After the operation "he was pretty sick. We had to give him transfusions afterward and he got pretty low, but he finally picked up." The ninety-day period of continuous total disability essential to create the presumably permanent disability for which recovery is sought expired October 13th. At any time thereafter to December 8th, when total disability ceased, the presentation of proof would have been within the terms of the policy. There is no evidence whatever that at any time during this period he was either physically or mentally incapacitated from making his proof, to say nothing of proof that he was so incapacitated during all of that period. After his total disability ceased,

the plaintiff was manifestly physically and mentally competent to make proof of such previous disability as he had suffered. In case of total disability, such as the plaintiff suffered, one does not recover either his physical strength or strength of mind in the twinkling of an eye or in a day. As a matter of reason and common sense, if the plaintiff was competent to make his proof the day after his total disability ceased, he was not incompetent to make it the day or many days before that time. We consider that the evidence does not warrant a finding of physical or mental incompetency to furnish proof, and the finding of the trial judge assumed by the plaintiff as equivalent to such a finding must be disregarded.

*By the Court.*—The judgment of the county court is reversed, and the cause is remanded with directions to enter judgment of dismissal of the complaint on the merits.